**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

GENNARO ROCCO AND LORETTA )
SCHWEINSBURG, individually and on )
behalf of all others similarly situated, )
                                        )      Case No.:
                    Plaintiffs,         )
                                        )
         v.                             )
                                        )
KRAFT HEINZ FOODS COMPANY,              )      **JURY TRIAL DEMANDED**
                                        )
                    Defendant.          )

## CLASS ACTION COMPLAINT

Plaintiffs Gennaro Rocco and Loretta Schweinsburg ("Plaintiffs"), individually and on

behalf of all others similarly situated, bring this action against Defendant Kraft Heinz Foods

Company ("Kraft Heinz" or "Defendant").  Plaintiffs make the following allegations pursuant to

the investigation of their counsel and based upon information and belief, except as to the

allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a putative class action lawsuit on behalf of purchasers of Maxwell House

coffee products  (collectively, the "Coffee Products") against Defendant for manufacturing,

distributing, and selling underfilled Coffee Products.

2.      Kraft Heinz is the fifth-largest food and beverage company in the world.[1]  Kraft

Heinz nets nearly $25 billion in annual sales by manufacturing, distributing, and marketing an

extensive line of processed food products through supermarkets, restaurants, and on-the-go

establishments in 200 countries.  Kraft Heinz brands include Kraft, Heinz, Maxwell House,

ABC, Capri Sun, Classico, Jell-O, Kool-Aid, Lunchables, Ore-Ida, Oscar Meyer, Philadelphia,

---

[1] https://www.investopedia.com/news/history-behind-kraft-heinz-co/ (last accessed June 22,
2020).

Planters, Plasmon, Quero, Weight Watchers, Smart Ones, and Velveeta. Maxwell House is the second-largest coffee brand in the United States, with U.S. sales totaling $475 million in 2019.[2]

3. Kraft Heinz engages in widespread false and deceptive advertising on its Maxwell House Coffee Products. In a practice that offends reasonable consumer expectations, Defendant employs a classic bait-and-switch scheme that causes unsuspecting consumers to spend more money for less than the advertised amount of coffee they believe they are purchasing. The packaging and labeling of the Coffee Products prominently advertise that they will produce a certain number of servings when, in fact, they do not.

4. In this case, Plaintiffs purchased Maxwell House Coffee Products that prominently advertise on their front labels that they "MAKE[] UP TO 240 6 FL OZ CUPS." One serving of Maxwell House Coffee consists of one (1) tablespoon of ground coffee and one (1) serving of water ("6 FL OZ (3/4 CUP)"). To make the advertised 240 servings, the Coffee Products would have to contain approximately 240 tablespoons of ground coffee. But the Coffee Products purchased by Plaintiffs contained only approximately ~170 tablespoons of ground coffee.

5. Defendant's other Maxwell House Coffee Products feature the same deceptive advertising. These include Defendant's 100% Colombian Roast, Breakfast Blend, Dark Roast, French Roast, Gourmet Roast, Vanilla, Half Caff. On each of these Coffee Products, the bottom of the front label prominently and conspicuously states the number of six-fluid-ounce servings of coffee the cannister will produce. As shown below, for example, the front label of the Maxwell House 100% Colombian Medium Roast states that the 24.5-ounce cannister "MAKES UP TO 210 6 FL OZ CUPS."

---

[2] https://www.statista.com/statistics/188315/top-ground-coffee-brands-in-the-united-states/ (last accessed June 25, 2020).



One serving of Maxwell House Coffee consists of one (1) tablespoon of ground coffee and one (1) serving of water ("6 FL OZ (3/4 CUP)"). This yields one (1) six-fluid-ounce serving of coffee. To make the advertised 210 servings, therefore, the 100% Colombian Roast would have to contain approximately 210 tablespoons of ground coffee. But it contains only approximately 134 tablespoons of ground coffee."

6.    As explained above, and detailed in the chart below, the Coffee Products do not yield the number of cups advertised by Defendant. Consumers reasonably expect that the Coffee Products will produce the number of cups promised on the label. However, they do not. Defendant uniformly and systematically misrepresents the actual contents of its Coffee Products. Independent testing has revealed that the Coffee Products do not, and cannot, yield the advertised amount of coffee. Plaintiffs' counsel commissioned an independent laboratory to perform

testing of Defendant's Coffee Products.  The testing showed that the Coffee Products are significantly underfilled:

| Product | Weight | Advertised Cups | Measured Cups (1) | % Underfill (1) | Measured Cups (10)[3] | % Underfill (10) |
|---------|--------|-----------------|-------------------|-----------------|----------------------|------------------|
| Original Roast | 869 g | 240 | 174.12 | 27.45% | 217.65 | 9.3% |
| Original Roast | 326 g | 90 | 67.27 | 25.25% | 84.09 | 6.5% |
| Original Roast | 1.20 kg | 325 | 222.66 | 31.4% | 278.33 | 14.36% |
| Original Roast | 1.04 kg | 288 | 190.80 | 33.75% | 238.5 | 17.18% |
| Wake Up Roast | 869 g | 240 | 168.57 | 29.7% | 209.46 | 12.7% |

7.      Plaintiffs and Class and Subclass Members relied to their detriment on Defendant's representations regarding the number of servings each Coffee Product would yield.  Plaintiffs and Class and Subclass Members would not have paid to purchase Defendant's Coffee Products – or would not have paid as much as they did to purchase them – had they known the truth about the products' actual serving yields. Plaintiffs and Class and Subclass Members thus suffered monetary damages as a result of Defendant's deceptive and false representations.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) in that: (1) this is a class action involving more than 100 Class Members;  (2) Plaintiff Rocco is a citizen of the State of New York, Plaintiff Schweinsburg is a citizen of the

---

[3] The directions for many Maxwell House Coffee Products include two different manners of preparation: single serving or ten servings.  For a single serving, Defendant directs the consumer to use one tablespoon of coffee.  For ten servings, Defendant directs the consumer to use eight tablespoons of coffee.  Regardless of the preparation method utilized, Defendant's Coffee Products are underfilled and do not provide the advertised number of cups of coffee.

State of California, and Defendant is a citizen of the State of Illinois; and (3) the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interests and costs.

9. This Court has personal jurisdiction over Defendant because Defendant has its corporate headquarters and principal place of business in this judicial district.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this judicial district and, therefore, a substantial part of the decisions that led to the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

11. Plaintiff Gennaro Rocco resides in Manhattan, New York. On or about December 10, 2019, Mr. Rocco purchased a cannister of Maxwell House Original Roast, 30.65 oz, for approximately $6.00 from a ShopRite grocery store located in Yonkers, New York. Mr. Rocco read the Coffee Product's labeling stating that the cannister "makes up to 240" six-fluid-ounce cups of coffee before purchasing the Coffee Product. In reliance on this representation, Mr. Rocco purchased the Coffee Product for his own personal use.

12. Plaintiff Loretta Schweinsburg resides in Costa Mesa, California. On or about May 15, 2020, Ms. Schweinsburg purchased a cannister of Maxwell House Wake Up Roast, 30.65 oz, for approximately $4.99 from an 99 Cents Store located in Costa Mesa, California. Ms. Schweinsburg read the Coffee Product's labeling stating that the cannister "makes up to 240" six fluid-ounce cups of coffee before purchasing the Coffee Product. In reliance on this representation, Ms. Schweinsburg purchased the Coffee Product for her own personal use.

13. Plaintiffs would not have purchased the Maxwell House Coffee Products – or would not have paid as much as they did for such products – had they known that Defendant misrepresented the number of servings each cannister would produce. Plaintiffs were further

damaged in their purchases of Maxwell House Coffee Products because Defendant's false advertisements increased consumer demand, which in turn led to an artificial price increase.

14.     Plaintiffs are susceptible to this reoccurring harm because they cannot be certain that Defendant has corrected this deceptive and false advertising scheme, and they want to continue to purchase Defendant's Coffee Products.  Plaintiffs greatly enjoy Maxwell House coffee and purchase it regularly in different varieties, but they currently cannot trust that Defendant will label and/or advertise its Coffee Products truthfully and accurately.  Plaintiffs simply do not have the resources to ensure that Defendant is complying with state and federal law with respect to the labeling and advertising of its Maxwell House Coffee Products.

15.     Additionally, because of the large number of Coffee Products involved in Defendant's deceit, and the likelihood that Defendant may yet develop and market additional Coffee Products that also misrepresent the actual serving yield, Plaintiffs may again, by mistake, purchase a falsely-advertised product from Defendant under the mistaken impression that Defendant has corrected its deceptive and false advertising scheme.

16.     Defendant Kraft Heinz Foods Company is a corporation organized and existing under the laws of the state of Delaware, with corporate co-headquarters at 200 East Randolph Street, Suite 7600, Chicago, Illinois 60601 and at One PPG Place, Suite 3200, Pittsburgh, Pennsylvania 15222.  Defendant is the fifth-largest food and beverage company in the world, with annual net sales of $25 billion.  Sales of Maxwell House Coffee Products totaled $475 million in 2019.

## FACTUAL ALLEGATIONS

17.     Defendant's advertising and marketing of Maxwell House Coffee Products is false and misleading and omits material information.  The Coffee Products prominently advertise on the front label that each cannister "Makes Up To _____ Cups."  One serving of Maxwell

House Coffee consists of (1) tablespoon of ground coffee per one (1) six-fluid-ounce serving. Consumers reasonably expect that the Coffee Product will yield the number of cups advertised on the front label. Nowhere on the Coffee Product packaging does Defendant inform consumers that the cannister will not produce the number of cups advertised on the front label. Defendant's misrepresentations and/or omissions violate consumers' reasonable expectations and, as alleged herein, California's and New York's consumer protection statutes. The number of servings each Maxwell House Coffee Product actually produces per tablespoon is objective factual proof that the Coffee Products are falsely advertised.

18. Throughout the class period defined below, Defendant has engaged in, and continues to engage in, an advertising and marketing campaign that misrepresents its Maxwell House Coffee Products. Defendant has engaged in, and continues to engage in, a pattern of willful conduct, through affirmative misrepresentations and/or material omissions, designed to mislead and lure consumers into purchasing Coffee Products they would not have otherwise purchased. As a result of this deception, Defendant has sold thousands, if not millions, of Coffee Products to unsuspecting consumers across the country, including in New York and California.

19. Defendant's advertising claims are false, misleading, and deceptive because Defendant willfully misrepresents and omits from the labeling and packaging of its Coffee Products information that is material to consumers' purchasing decision – the number of servings of coffee that each cannister will produce. Defendant, thus, intentionally misleads consumers into purchasing its Coffee Products based on false, misleading, and deceptive advertising that portrays the Coffee Products as having characteristics that they do not, in fact, have.

20.     In making the false, misleading, and deceptive representations and omissions described above, Defendant knew and/or intended that consumers would purchase its Coffee Products and pay more for them under the false – but reasonable – belief that each cannister would produce more cups of coffee than it actually does.  By advertising so prominently that the Coffee Products produce more cups than they actually do, Defendant proves that information about serving yield is material to consumers.  If such information were not material, Defendant would not feature it in capital letters on the front label of every Maxwell House Coffee Product.

21.     Any reasonable consumer would rely on Defendant's false, misleading, and deceptive representations and/or omissions about serving yield when deciding whether to purchase a Maxwell House Coffee Product.  Plaintiffs and Class and Subclass Members did so to their detriment.  Defendant's representations and/or omissions misled Plaintiffs and Class and Subclass Members and are likely to mislead the broader consuming public.

22.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiffs and Class and Subclass Members were injured that they: (1) paid money for Coffee Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than what Defendant advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than what Defendant represented.

23.     Had Defendant not made the false, misleading, and deceptive representations and/or omissions alleged herein, Plaintiffs and Class and Subclass Members would not have purchased the Coffee Products or would not have paid as much as they did for such products.  Thus, each Plaintiff and Class and Subclass member suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

24.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

25.     Plaintiffs seek to represent a class defined as all people who purchased any Maxwell House Coffee Product falsely advertising the number of coffee cups that the product would purportedly produce during the applicable statute of limitations and who have not received a refund or credit for their purchase(s) (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

26.     Plaintiff Gennaro Rocco also seeks to represent a subclass consisting of Class Members who reside in New York (the "New York Subclass").

27.     Plaintiff Loretta Schweinsburg also seeks to represent a subclass consisting of Class Members who reside in California (the "California Subclass").

28.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclasses may be expanded or narrowed by amendment or amended complaint.

29.     **Numerosity.**  The Class and Subclasses Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are hundreds of thousands of Members in the Class and in each Subclass.  Although the precise number of Class and Subclass Members is unknown to Plaintiffs, it is known by Defendant and may be determined through discovery.

30.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all Members of the Class and Subclasses and predominate over any questions affecting only individual Class or Subclass members.  These common legal and factual questions include, but are not limited to, the following:

(a)     Whether Defendant made false and/or misleading statements to the consuming public concerning the serving yield in the Coffee Products;

(b)     Whether Defendant omitted material information to the consuming public concerning the actual serving yield in the Coffee Products;

(c)     Whether Defendant's labeling and packaging for the Coffee Products is misleading and/or deceptive;

(d)     Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Coffee Products;

(e)     Whether Defendant's representations concerning the Coffee Products were likely to deceive a reasonable consumer;

(f)     Whether Defendant's omissions concerning the Coffee Products were likely to deceive a reasonable consumer;

(g)     Whether Defendant represented to consumers that the Coffee Products have characteristics, benefits, or qualities that they do not have;

(h)     Whether Defendant advertised the Coffee Products with the intent to sell them not as advertised;

(i)     Whether Defendant falsely advertised the Coffee Products;

(j)     Whether Defendant made and breached express and/or implied warranties to Plaintiffs and Class and Subclass Members about the Coffee Products;

(k)     Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiffs and Class and Subclass Members; and

(l)     Whether Plaintiffs and Class and Subclass Members are entitled to damages.

31.     **Typicality.**  Plaintiffs' claims are typical of the claims of the other Members of the Class and Subclasses in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the serving yield of its Maxwell House Coffee Products.  All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiffs.

32.     **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the interests of the Members of the Class and Subclasses.  Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Class and Subclasses.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclasses.

33.     **Superiority.**  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually

impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them. Even if Class or Subclass Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. It would also increase the delay and expense to all parties and the court system from the issues raised by this action. The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

34. In the alternative, the Class and Subclasses may also be certified because:

(a) the prosecution of separate actions by individual Class and Subclass Members would create a risk of inconsistent or varying adjudications with respect to individual Class or Subclass Members that would establish incompatible standards of conduct for Defendant;

(b) the prosecution of separate actions by individual Class and Subclass Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class and Subclass Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c) Defendant has acted or refused to act on grounds generally applicable to the Class and to each Subclass as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the Members of the Class and to the Members of each Subclass as a whole.

## FIRST CLAIM FOR RELIEF
### Violation Of Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code § 1750, *et seq.*
### (On Behalf Of The California Subclass)

35.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

36.     Plaintiff Loretta Schweinsburg brings this claim individually and on behalf of the Members of the proposed California Subclass against Defendant.

37.     Defendant violated California's Consumers Legal Remedies Act (the "CLRA") by engaging in the following unfair and deceptive business practices, as alleged above and herein:

      (a)     Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the Coffee Products have characteristics that they do not have.

      (b)     Defendant violated Cal. Civ. Code § 1770(a)(9) by advertising the Coffee Products with the intent not to sell them as advertised.

38.     The CLRA was enacted to protect consumers against such practices. The CLRA applies to Defendant's conduct because the statute covers all sales of goods to consumers.

39.     Plaintiff Schweinsburg and other Members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d). By purchasing Defendant's Maxwell House Coffee Products, Plaintiff Schweinsburg and other Members of the California Subclass engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

40.     Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Coffee Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

41.     Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Coffee Products.

42.     As a direct and proximate result of Defendant's unfair and deceptive business practices, as alleged above and herein, Plaintiff Schweinsburg and other Members of the California Subclass suffered injury and damages in an amount to be determined at trial.

43.     On information and belief, Defendant's unfair and deceptive business practices, as alleged above and herein, were willful, wanton, and fraudulent.

44.     On information and belief, Defendant's officers, directors, and/or managing agents authorized the use of the false and misleading statements and material omissions regarding the serving yield of Defendant's Coffee Products, as alleged above and herein.

45.     On June 16, 2020, prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant a CLRA notice letter, which complies in all respects with California Civil Code §1782(a).  The letter also provided notice of breach of express and implied warranties.  The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of Plaintiffs and all other similarly situated purchasers.

46.     Plaintiff Schweinsburg and the California Subclass Members seek to enjoin the unlawful acts and practices described herein.

### SECOND CLAIM FOR RELIEF
**Violation Of Unfair Competition Law,
Cal. Bus. & Prof. Code § 17200, *et seq.*
(On Behalf Of The California Subclass)**

47.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

48.     Plaintiff Loretta Schweinsburg brings this claim individually and on behalf of the Members of the proposed California Subclass against Defendant.

49.     Defendant violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, by engaging in unfair, fraudulent, and unlawful business practices.

50.     Plaintiff Schweinsburg has standing to pursue this claim because she has suffered an injury-in-fact and has lost money or property as a result of Defendant's unlawful, unfair, and fraudulent conduct.  Specifically, Plaintiff Schweinsburg purchased a Maxwell House Coffee Product for her own personal consumption.  In doing so, Plaintiff Schweinsburg relied upon Defendant's false representations that the Coffee Product would produce more servings of coffee than it actually did.  Plaintiff Schweinsburg spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's advertising claims.

### "Unfair" Prong of the UCL

51.     A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  That unfairness is determined by weighing the reasons, justifications, and motives for the business act or practice against the gravity of the harm to the alleged victims.

52.     Defendant's conduct constitutes an "unfair" business practice because, as alleged herein, Defendant has engaged, and continues to engage, in a false, misleading, and deceptive advertising campaign that misleads consumers into believing that the Coffee Products they purchase will yield a greater number of servings than each cannister actually contains.

53.     Defendant's conduct, as alleged above and herein, was not motivated by any legitimate business or economic need or rationale, other than to maximize its profits at the expense of consumers.  No legitimate reasons, justifications, or motives outweigh the harm and adverse impact of Defendant's conduct on members of the general consuming public.  Defendant engaged, and continues to engage, in such conduct solely to wrongfully extract monies from consumers, including Plaintiff Schweinsburg, to which Defendant is not entitled.  Defendant

could have, but has not, used alternate means of effecting its legitimate business needs, such as by properly disclosing (1) how many servings of coffee each Coffee Product produces, and/or (2) that the Coffee Products produce fewer than the "MAKES UP TO ___ CUPS" number of servings advertised on the front label.

54.     Defendant's conduct harms consumers and hurts market competition. Defendant's conduct, as alleged herein, is immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff Schweinsburg and Members of the California Subclass because it violates consumers' reasonable expectations. If Defendant had advertised its Coffee Products in a non-misleading fashion, Plaintiff and other California Subclass Members could have considered other options for purchasing coffee grounds.

### *"Fraudulent" Prong of the UCL*

55.     A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

56.     Defendant has engaged, and continues to engage, in a "fraudulent" business practice by knowingly representing to consumers that the Coffee Products they purchase will yield a greater number of servings than they actually do. Defendant's conduct deceived Plaintiff Schweinsburg and other California Subclass Members who purchased the Coffee Products in reliance on the advertised serving yield, and it is highly likely to deceive members of the consuming public because, as alleged above, it violates consumers' reasonable expectations regarding serving yield. Such a business practice lacks utility and functions only to maximize Defendant's profits at the expense of its customers. The gravity of the harm to Plaintiff Schweinsburg and other California Subclass Members, who lost money or property by paying for the Coffee Products, far outweighs any benefit of Defendant's conduct.

57. Further, Defendant's fraudulent business practice will continue to mislead consumers because it will be impossible for consumers to know whether Defendant has stopped misrepresenting the serving yield of its Coffee Products until *after* consumers purchase such products. Accordingly, the risk of harm to Plaintiff Schweinsburg, Members of the California Subclass, and the consuming public is ongoing.

### *"Unlawful" Prong of the UCL*

58. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

59. Defendant's business practices, as alleged herein, constitute violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (the "CLRA"). Specifically, Defendant has unlawfully marketed and advertised its Maxwell House Coffee Products in violation of Cal. Civ. Code §§ 1770(a)(5) and 1770(a)(9), as detailed below.

60. Defendant's business practices also constitute violations of California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (the "FAL"), as detailed below.

61. Defendant's unfair, fraudulent, and unlawful business practices, as enumerated and explained above, were the direct and proximate cause of financial injury to Plaintiff Schweinsburg and other Members of the California Subclass. Defendant has unjustly benefitted as a result of its wrongful conduct. Accordingly, Plaintiff Schweinsburg and the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and other California Subclass Members; (b) disgorge all revenues obtained as a result of its violations of the UCL; (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

**THIRD CLAIM FOR RELIEF**
**Violation Of False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500, *et seq.***
**(On Behalf Of The California Subclass)**

62.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations

contained in all preceding paragraphs of this complaint.

63.     Plaintiff Loretta Schweinsburg brings this claim individually and on behalf of the

Members of the proposed California Subclass against Defendant.

64.     Defendant violated California's False Advertising Law ("FAL"), Cal. Bus. &

Prof. Code § 17500 by publicly disseminating false, misleading, and/or unsubstantiated

advertisements regarding its Maxwell House Coffee Products as alleged above and herein.

65.     Plaintiff Schweinsburg has standing to pursue this claim because she has suffered

an injury-in-fact and has lost money or property as a result of Defendant's false advertising.

Specifically, Plaintiff Schweinsburg purchased a Maxwell House Coffee Product for her own

personal consumption.  In doing so, Plaintiff Schweinsburg relied upon Defendant's false, and

misleading representations that the Coffee Product would produce more servings of coffee than it

actually did.  Plaintiff Schweinsburg spent money in the transaction that she otherwise would not

have spent had she known the truth about Defendant's advertising claims.

66.     Defendant disseminated false and misleading advertisements to increase the sales

of its Maxwell House Coffee Products.

67.     Defendant knew or should have known that the advertisements for its Maxwell

House Coffee Products were false and/or misleading.

68.     Defendant knew or should have known that consumers, including Plaintiff

Schweinsburg and other Members of the California Subclass, would believe that the Coffee

Products would produce the number of servings prominently advertised on their front labels.

69.     Plaintiff Schweinsburg and Members of the California Subclass have suffered harm as a result of Defendant's violations of the FAL because they paid monies for the Coffee Products that they would not have paid but for Defendant's false and misleading advertisements.

70.     Accordingly, Plaintiff Schweinsburg and Members of the California Subclass seek an order of this Court that includes, but is not limited to, requiring Defendant to: (a) provide restitution to Plaintiff and other California Subclass Members;  (b) disgorge all revenues obtained as a result of its violations of the FAL; (c) pay attorneys' fees and costs for Plaintiff and the California Subclass.

**FOURTH CLAIM FOR RELIEF**
**Deceptive Acts Or Practices,**
**Violation Of New York Gen. Bus. Law § 349**
**(On Behalf Of The New York Subclass)**

71.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

72.     Plaintiff Gennaro Rocco brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

73.     Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the serving yield of its Coffee Products to mislead consumers into believing the Coffee Products they purchase will yield a greater number of servings than each cannister actually contains.

74.     Plaintiff Rocco has standing to pursue this claim because he has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff Rocco purchased a Coffee Product for his own personal consumption.  In doing so, Plaintiff Rocco relied upon Defendant's false, misleading, and deceptive representations that the Coffee Product would produce more servings of coffee than it actually did.  Plaintiff Rocco spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

75.     Defendant's deceptive acts and practices were directed at consumers.

76.     Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase Coffee Products and/or pay more for them under the false – but reasonable – belief that each cannister would produce more servings than it actually does.  By advertising so prominently that the Coffee Products yield more servings than they actually do, Defendant proves that information about serving yield is material to consumers.  If such information were not material, Defendant would not feature it in capital letters on the front label of every Coffee Product cannister.  As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Coffee Products to unsuspecting consumers across New York.  If Defendant had advertised its Coffee Products truthfully and in a non-misleading fashion, Plaintiff and other New York Subclass Members would not have purchased them or would not have paid as much as they did for them.

77.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff Rocco and other Members of the New York Subclass were injured in that they: (1) paid money for Coffee Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the

20

bargain because the Coffee Products they purchased had less value than Defendant represented.

78.    On behalf of himself and Members of the New York Subclass, Plaintiff Rocco seeks to enjoin Defendant's unlawful acts and practices and recover his actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**FIFTH CLAIM FOR RELIEF**
**False Advertising,**
**Violation Of New York Gen. Bus. Law § 350**
**(On Behalf Of The New York Subclass)**

79.    Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

80.    Plaintiff Gennaro Rocco brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

81.    Defendant engaged in a campaign of false advertising with regard to the serving yield of its Coffee Products to mislead consumers into believing the Coffee Products they purchase will yield a greater number of servings than each cannister actually contains.

82.    Plaintiff Rocco has standing to pursue this claim because he has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices.  Specifically, Plaintiff Rocco purchased a Coffee Product for his own personal consumption.  In doing so, Plaintiff Rocco relied upon Defendant's false, misleading, and deceptive representations that the Coffee Product would produce more servings of coffee than it actually did.  Plaintiff Rocco spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

83.    Defendant's deceptive acts and practices were directed at consumers.

84.    Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendant had advertised its Coffee Products truthfully and in a non-misleading fashion,

21

Plaintiff and other New York Subclass Members would not have purchased the Coffee Products or would not have paid as much as they did for them.

85.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Plaintiff Rocco and other Members of the New York Subclass were injured in that they: (1) paid money for Coffee Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than Defendant represented.

86.     On behalf of himself and Members of the New York Subclass, Plaintiff Rocco seeks to enjoin Defendant's unlawful acts and practices and recover his actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**SIXTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
**(On Behalf Of The Class, The California Subclass, And The New York Subclass)**

87.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

88.     Plaintiffs Gennaro Rocco and Loretta Schweinsburg bring this claim individually and on behalf of the Members of the proposed Class and Subclasses against Defendant.

89.     As the designer, manufacturer, marketer, distributor, and/or seller of Maxwell House Coffee Products, Defendant issued an express warranty by representing to consumers at the point of purchase that each Coffee Product would yield a certain number of servings of coffee.  Defendant's representations were part of the description of the goods and the bargain upon which the goods were offered for sale and purchased by Plaintiffs and Members of the Class and Subclasses.

90.     In fact, the Coffee Products do not conform to Defendant's representations about serving yield.  Each Coffee Product produces fewer servings of coffee than what Defendant represents.  By falsely representing the Coffee Products in this way, Defendant breached express warranties.

91.     As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class and Subclasses were injured because they: (1) paid money for Coffee Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than Defendant represented.  Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiffs and Class and Subclass Members would not have purchased the Coffee Products or would not have paid as much as they did for them.

**SEVENTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
**(On Behalf Of The Class, The California Subclass, And The New York Subclass)**

92.     Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this complaint.

93.     Plaintiffs Gennaro Rocco and Loretta Schweinsburg bring this claim individually and on behalf of the Members of the proposed Class and Subclasses against Defendant.

94.     Defendant routinely engages in the manufacture, distribution, and/or sale of Maxwell House Coffee Products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

95.     Plaintiffs and Members of the Class and Subclasses were consumers who purchased Defendant's Coffee Products for the ordinary purpose of such products.

96.     By representing that the Coffee Products would produce a certain number of servings, Defendant impliedly warranted to consumers that the Coffee Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

97.     However, the Coffee Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description.

98.     As a direct and proximate result of Defendant's breach, Plaintiffs and Members of the Class and Subclasses were injured because they paid money for Coffee Products that would not pass without objection in the trade or industry under the contract description.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendant as follows:

a.  Certifying the nationwide Class, the New York Subclass, and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and respective Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass Members;

b.  Declaring that Defendant's conduct violates the statutes referenced herein;

c.  Finding in favor of Plaintiffs, the nationwide Class, the New York Subclass, and the California Subclass against Defendant on all counts asserted herein;

d.  Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

e.  Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all the money it is required to pay;

f.  Awarding Plaintiffs and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

g.  Ordering Defendant to pay pre-judgment interest on all amounts awarded;

h.  Providing such further relief as may be just and proper.

## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated:  August 4, 2020                              Respectfully submitted,

**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLC**

By:      */s/ Carl V. Malmstrom*
                   Carl V. Malmstrom
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
Email:  malmstrom@whafh.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher*
Brittany S. Scott*
1990 N. California Blvd., Suite 940
Walnut Creek, CA 94596
Tel:  (925) 300-4455
Fax: (925) 407-2700
E-Mail: bscott@bursor.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Carl V. Malmstrom declare as follows:

1.       I am an attorney at law licensed to practice in the State of Illinois and a member of the bar of this Court.  I am Of Counsel at Wolf Haldenstein, counsel of record for Plaintiffs in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.       The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Northern District of Illinois.

I declare under the penalty of perjury under the laws of the State of Illinois and the United States that the foregoing is true and correct and that this declaration was executed at Chicago, Illinois this 4th day of August, 2020.

*/s/ Carl V. Malmstrom*
Carl V. Malmstrom